# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

JACQUELYN and WILLIAM ORR,   )
                                )
      Plaintiffs,            )
                                )
v.                              )            CV416-052
                                )
MACY'S RETAIL HOLDINGS, INC.,  )
                                )
      Defendant.        )

## ORDER

Plaintiffs Jacqueline and William Orr sued defendant Macy's Retail Holdings, Inc., for physical injury and loss of consortium after a fitting room door fell on Jacqueline at a Savannah, Georgia Macy's store. Several motions are currently pending before the Court.

## A.   MOTIONS TO COMPEL

Motions to compel are governed by the rules of discovery, which

> require the disclosure of all relevant information so that ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts. . . . Hence, [t]he scope of discovery under Fed. R. Civ. P. 26(b)(1) is broad and includes discovery regarding any matter, not privileged, which is relevant to the claims or defense of any party involved in the pending action. Those resisting discovery must show specifically how the objected-to request is unreasonable or otherwise unduly burdensome.

> *Claims and defenses* determine discovery's scope. Evidence is relevant if it has any tendency to make the existence of any fact or consequence more or less probable than it would be without the evidence.

*Daniel Def., Inc. v. Remington Arms Co., LLC*, 2015 WL 6142883 at * 2 (S.D. Ga. Oct. 19, 2015) (cites and quotes omitted).[1]

### 1. Macy's Internal Incident Reports

Plaintiffs served discovery requesting "documents, work orders and/or customer incident reports" referencing fitting room doors "falling or coming unattached" for all Macy's stores for the past ten years. Doc 42, Exh. A. Macy's objected to the request as "overly broad in time and scope, unduly burdensome," and as seeking "information that is irrelevant." *Id.*, Exh. B. Plaintiffs then narrowed their request to the past four years in only Macy's Southeast region. *Id.*, Exhs. C & D.

---

[1] "The standard for what constitutes relevant evidence is a low one." *United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002); *McCleod v. Nat'l R.R. Passenger Corp.*, 2014 WL 1616414 at * 3 (S.D. Ga. Apr. 22, 2014) ("Rule 26, quite simply, sets forth a *very* low threshold for relevancy, and thus, the court is inclined to err in favor of discovery rather than against it."). The recent changes to the Federal Rules of Civil Procedure (in particular, Rule 26), although substantive and substantial, do not change the *definition* of relevance. Instead, they reemphasize and highlight requirements already present in the Rules, like proportionality. *See* Fed. R. Civ. P. 26, advisory committee note (2015) ("Restoring the proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties to consider proportionality. . . ."); *Sibley v. Choice Hotels Int'l*, 2015 WL 9413101 at * 2 (E.D.N.Y. Dec. 22, 2015) ("While proportionality factors have now been incorporated into the Rule 26(b)(1) definition, those factors were already a part of Federal discovery standards, appearing in Rule 26(b)(2)(C)(iii)").

Macy's again objected that the request was overbroad and sought irrelevant information, as there are at least 70 regional stores to be searched and this case involves only a "wear and tear" maintenance issue local only to the Savannah location. *See* doc. 42, Exh. E. Plaintiffs contend that the evidence of prior, similar accidents is relevant to Macy's negligence. Docs. 42, 51.

Evidence of prior accidents or occurrences is admissible "to show, for example 'notice, magnitude of the danger involved, the [party's] ability to correct a known defect, the lack of safety for intended uses, strength of a product, the standard of care, and causation.'" *Heath v. Suzuki Motor Corp.*, 126 F.3d 1391, 1396, 1396 (11th Cir. 1997) (quoting Jones v. Otis Elevator Co., 861 F.2d 655, 661 (11th Cir.1988)). The "substantial similarity" doctrine does not require identical circumstances, and allows for some play in the joints depending on the scenario presented and the desired use of the evidence. *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1287 (11th Cir. 2015); *Borden, Inc. v. Florida East Coast Railway Co.*, 772 F.2d 750 (11th Cir. 1985).

"Because of the potential prejudicial impact of prior accidents, courts have developed limitations governing their admissibility. First,

conditions substantially similar to the occurrence in question must have caused the prior accident. . . . Second, the prior accident must not have occurred too remote in time." *Jones v. Otis Elevator Co.*, 861 F.2d at 661-62. The entitlement to *discovery* concerning other incidents, however, does not require a party to lay the same foundation of substantial similarity as would be necessary to support admission into evidence. *See, e.g., Ree v. Royal Caribbean Cruises Ltd.,* __ F.R.D. __, 2016 WL 1576350 at *2 (S.D. Fla. Feb. 25, 2016)*; Lohr v. Stanley-Bostitch, Inc.,* 135 F.R.D. 162, 164-65 (W.D. Mich. 1991); *Uitts v. General Motors Corp.,* 58 F.R.D. 450, 452–53 (E.D. Pa. 1972). For discovery purposes, a court need only find that the circumstances surrounding the other accidents or products are "similar enough" that discovery concerning those incidents is reasonably calculated to lead to the uncovering of "substantially similar" occurrences. *See, e.g., A.H. ex rel. Hadjih v. Evenflo Co.,* 2011 WL 3684807 at *4 (D. Colo. Aug. 23, 2011); *Kramer v. Boeing Co.,* 126 F.R.D. 690, 692-95 (D. Minn. 1989); *see also Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985) ( "Rule 26 provides that the proper scope of discovery is not limited to information admissible at trial, but can also include

information 'reasonably calculated to lead to the discovery of admissible evidence.'").

The problem for plaintiffs is that even under the relaxed discovery standard their *prima facie* showing for discoverability fails. They seek "all documents, work orders and/or customer incident reports, which reference fitting room and/or dressing room doors and/or frames falling or coming unattached from either their frames, hinges, and/or privacy panels" for "the past four (4) years for all Macy's stores in the Macy's Southeastern division." Doc. 42, Exhs. A & C. To satisfy the substantial similarly doctrine a past incident must be reasonably related in terms of location *and* condition. But this request is not so limited. It seeks production of a broad swath of data that is potentially irrelevant to the allegations of the Complaint.[2]

---

[2] Plaintiffs' reliance on this Court's decision in *Jaquillard* is misplaced. Doc. 42 at 5-7 (relying upon *Jaquillard v. Home Depot U.S.A., Inc.*, 2012 WL 527418 (S.D. Ga. Feb. 16, 2012) and *Foster v. Logan's Roadhouse, Inc.*, 2013 WL 1498958 (N.D. Ala. Apr. 4, 2013) (applying the *Jaquillard* decision to a discovery dispute). In *Jaquillard*, only evidence of prior incidents which would "show notice" to the defendant were admissible. That is, only those prior incidents with *conditions* that were *substantially similar* to the incident in question were admissible. And in *Logan*, only those prior incidents involving the specific conditions leading to the plaintiff's injury were subject to discovery.

Here, plaintiffs are seeking far more information than that sought by the parties in *Jaquillard* and *Logan*. Plaintiffs are seeking all documents that in *any* way involve dressing room doors coming unattached for *any* reason, when the *condition*

Plaintiffs' request ostensibly requires production of *any* document in *any* way related to dressing room door maintenance, replacement, damage, complaints, and injuries in *any* store in the Southeast division of Macy's. Meanwhile, their Second Amended Complaint alleges that *at this one store*, Macy's failed to adequately inspect/maintain its fitting room doors. There are no allegations that the same maintenance policy is applied or the same maintenance crew inspects/maintains dressing room doors at each Macy's store in the corporate Southeast region. *See also* doc. 55, Exh. I (Deposition of Maintenance Worker Kimsey Rutland) (testifying that he is the only maintenance person at the Savannah location). Meaning, the *conditions* that led to the dressing room door falling on Jacqueline likely vary dramatically from store to store (a broken hinge here, a cracked door frame there, etc.). Discovery on these stores, then, is not probative to demonstrating Macy's negligence at *this* store.

Macy's objection is therefore sustained because plaintiffs have not shown even on a "similar enough" basis how this broad request is

---

that led to Jacqueline's injuries was a "wear and tear problem" with the hinge of a dressing room door that developed over time, was not inspected, and was not fixed before coming unattached from the frame.

permissible based on the location or conditions alleged in the Complaint. *See, e.g., Sorrels*, 796 F.3d at 1287 (affirming exclusion of past incidents where "none of them occurred where [plaintiff] fell[,]" "the liquids that the other passengers slipped on differed[,]" and "in some of the other incidents there were other factors involved"). Plaintiffs must tether their request to the particular store where the accident occurred, and limit their document sweep to dressing room doors. *See* doc. 25 (Second Amended Complaint) at ¶¶ 4-5. For that matter, it appears that most, if not all, of this data has already been produced. *See* doc. 42, Exh. E (Macy's has already produced "all customer incident reports (including any photographs) involving fitting room doors for the four years prior to the Orr incident").

## 2. Macy's Financials

Plaintiffs served document requests on Macy's Retail Holdings, seeking tax returns and year-end profit and loss statements, balance sheets, and general ledgers for "all" of its "affiliates and subsidiaries from 2011 through the present," including those prepared on behalf of its Savannah store. Doc. 55, Exh. A. Macy's objected that such information was irrelevant and immaterial to the case, particularly

given that plaintiffs have not demonstrated "a factual basis exists for any punitive damages claim." *Id.*, Exh. B (citing *Coach, Inc. v. Hubert Keller, Inc.*, 911 F. Supp. 2d 1303 (S.D. Ga. 2012)). Plaintiffs contend that they have alleged facts supporting a punitive damages award and are entitled to discovery of Macy's financial information. Doc. 55.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . ." Fed. R. Civ. P. 26(b)(1). This rule is to be broadly construed with all doubts resolved in favor of open discovery. *See Oppenheimer Fund, Inc., v. Sanders*, 437 U.S. 340, 351 (1978) (relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case"); *see also National Serv. Ind., Inc. v. Vafla Corp.*, 694 F.2d 246, 250 (11th Cir. 1982). Tax returns and private financial data enjoy some protection from discovery, and most courts require a clear and compelling showing to justify disclosure.[3] The dispute here is whether plaintiffs have

---

[3] Although tax returns are not privileged, *see St. Regis Paper Co. v. United States*, 368 U.S. 208, 218-19 (1961), their disclosure in civil actions requires "a balancing of the policy of liberal discovery against the policy of maintaining the confidentiality of tax returns." *SEC v. Cymaticolor Corp.*, 106 F.R.D. 545, 547 (S.D.N.Y.1985). *See, e.g., Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2006 WL 5157686 at *7

adequately alleged facts supporting a punitive damages award, so that Macy's financial resources would be relevant and discoverable.

Punitive damages may be awarded where a defendant's actions show "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1. In Georgia,

> [c]lear and convincing evidence of a defendant's willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences is required to warrant the imposition of punitive damages. It is not essential to a recovery for punitive damages that the person inflicting the damage was guilty of willful and intentional misconduct. It is sufficient that the act be done under such circumstances as evinces an entire want of care and a conscious indifference to consequences. Whether a tort was sufficiently aggravating to authorize punitive damages is generally a jury question, and a jury may award punitive damages where the clear and convincing evidence only creates an inference of the defendant's conscious indifference to the consequences of the acts. However, by itself, "[n]egligence, even gross negligence, is insufficient to support such an award."

---

(N.D. Ga. May 31, 2006) ("In general, most courts have noted that public policy concerns favor keeping tax returns confidential when possible, and have ordered production only when the relevance of the information is clear and there is a compelling need."); *Camp v. Correctional Medical Services*, 2009 WL 424723 at *2 (M.D. Ala. Feb. 17, 2009) (applying a two-prong test: (1) find that the returns are relevant to the subject matter of the action; and (2) there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable); *Water Out Drying Corp. v. Allen*, 2006 WL 1642215 at *1 (W.D.N.C. June 7, 2006) ("Disclosure of tax returns is disfavored and courts should exercise great caution in ordering disclosure of tax returns.").

*Hamlett v. Carroll Fulmer Logistics Corporation*, 2016 WL 5844486 at * 5 (S.D. Ga. Sept. 30, 2016) (quotes and cites omitted).

At best, plaintiffs allege that Macy's negligently inspected and maintained its fitting room doors at the Oglethorpe store. Even crediting their allegation of two similar incidents at the same store, the case does not rise above gross negligence. As discussed above, plaintiffs already have the Savannah store's incident reports regarding fitting room doors. Yet, they have not alleged that these two incidents were caused by the same *conditions* as the one which injured Jacqueline. *See* doc. 55, Exh. I (Rutland Depo.), pp. 86:21-87:20) (the cause of the August 2014 boys' fitting room door incident was unknown), Exh. J (Deposition of Sales Manager Kim Donaldson) at 87:1-5, 94:15-23 (admitting the July 2014 Women's World fitting room door incident also involved "a certain level of similarity" to the Orr incident, in that "[t]hey both involved fitting room doors falling on a client"), Exh. L (Deposition of Administrate Team Member Sharon Kearney) at 34:4-12 (she did not know why either the boys' or Women's World fitting room doors fell).

Despite characterizing this as a "plethora of evidence" supporting their punitive damages claim, two "similar" incidents caused by

unknown conditions are not sufficient evidence to support their punitive damages claim. Absent such a minimal showing, Macy's financial information is irrelevant to the action and disclosure is unwarranted. "The parties should not be permitted to roam in shadow zones of relevancy and to explore a matter which does not presently appear germane on the theory that it might conceivably become so." *Lemanik v. McKinley Allsopp, Inc.*, 125 F.R.D. 602, 609 (S.D.N.Y. 1989). Plaintiffs therefore are not entitled to that information.

### 3. Surveillance Videos

Jacqueline has testified that, as a result of her injuries, she has pain running up her arm into the side of her neck and face, is limited in her daily activities, and is unable to think clearly due to the pain. Doc. 53, Exh. 1 (Deposition of Jacqueline Orr) at 79:14-24, 87:24-88:6, 109:11-17. Macy's hired private investigators to surveil Jacqueline, then disclosed their names in supplemental responses to discovery. Plaintiffs seek production of this video. Doc. 55 (motion to compel production). Macy's opposes, arguing that impeachment video need not

be produced.[4]  Doc. 59 (motion to quash and for a protective order).

Rule 26(b)(1) allows discovery of "any matter, not privileged, which is relevant to the subject matter involved in the pending action." "Obviously files which would tend to show a plaintiff's physical condition, how he moves, and the restrictions which are his, are highly relevant -- perhaps they will establish the most important facts in the entire case." *Snead v. Am. Export-Isbrandtsen Lines, Inc.*, 59 F.R.D. 148, 150 (E.D. Pa. 1973).  Therefore, the surveillance materials can be discovered[5] if they are not privileged.

---

[4]  As an initial matter, Rule 26(a)(3) does not exempt impeachment materials from discovery.  Rule 26(a) is concerned with automatic disclosure of materials, not the scope of discovery.  Under Rule 26(a) certain materials must be disclosed "without waiting a discovery request".  The *scope* of discovery is described in Rule 26(b), which provides: "Parties may obtain discovery regarding any matter, not privileged which is relevant to the subject matter involved in the pending action . . ." (emphasis added).  While disclosure rule (a)(3) exempts impeachment materials, discovery rule (b) does *not*.

[5]  Macy's argues that its surveillance evidence will only be introduced at trial to impeach testimony about Jacqueline's injuries.  Thus, it appears to the Court that the surveillance evidence crosses the line from "mere impeachment" into substantive evidence: Macy's intends to offer it as *evidence* to contradict Jacqueline's allegations of "'severe and serious' physical injuries" and/or her husband's claim for loss of consortium.  *See* doc. 59 at 1, 5-6 (Macy's hired investigators to record plaintiff(s) "to directly contradict certain deposition testimony given by Plaintiff Jacqueline Orr and her treating physicians regarding [her] condition and her alleged physical limitations.").

This is an important distinction, as the cases Macy's relies upon both specify that the videos were offered *only* for the purpose of impeachment at trial, *not* as substantive evidence of the plaintiffs' actual injuries.  *See Alphonso v. Esfeller Oil*

Macy's invokes the work product privilege for its surveillance data. The work product doctrine, found in Rule 26(b)(3), was adopted to codify the rule formulated in *Hickman v. Taylor*, 329 U.S. 495 (1947), that attorney work product would be accorded a limited immunity from discovery. *Joyner v. Continental Insurance Companies*, 101 F.R.D. 414, 415 (S.D. Ga. 1983). The burden is on the party asserting it to establish (1) that the material sought to be withheld from disclosure consists of documents or tangible things, (2) prepared in anticipation of litigation or for trial, (3) by or for another party or by or for that party's representative. *City Consumer Services, Inc. v. Horne*, 100 F.R.D. 740, 747 (D. Utah 1983).

Work product under Rule 26(b)(3) can be separated into two types, "one of which is 'absolutely' immune from discovery and the other only qualifiedly immune." *Nat'l Union Fire Ins. v. Murray Sheet Metal*, 967 F.2d 980, 983 (4th Cir. 1992). The "mental impressions, conclusions, opinions [and] legal theories . . . concerning the litigation" are

*Field Const., Inc.*, 380 F. App'x 808, 810 (11th Cir. 2010); *Hiatt v. Rebel Auction Co.*, 2015 WL 4935569 (S.D. Ga. Aug. 18, 2015). Though Macy's concludes that its surveillance evidence is limited to impeachment purposes, it is clear to the Court that the intended use of the surveillance crosses the line to proving the case -- that plaintiffs were not injured -- rather than being limited to rebutting some portions of trial testimony.

absolutely protected from discovery while discovery of other forms of work product is permitted upon a showing of substantial need. *Id.*

Macy's contends that the surveillance photographs, video, and audio are protected work product that contains the "mental impressions of the investigators or [ ] is otherwise protected by the work product doctrine." Doc. 59. at 7-8. As discussed by the court in *Ward*:

> Surveillance materials are clearly within the definition of work product since they are tangible and were prepared in anticipation of litigation by or for a party to the litigation. The surveillance materials are, however, entitled to only a *qualified immunity* since no mental impressions, conclusions, or legal theories of the attorney are implicated. The qualified immunity can be overcome by a showing of substantial need.
>
> The only time there will be a substantial need to know about surveillance pictures will be in those instances where there would be a major discrepancy between the testimony the plaintiff will give and that which the films would seem to portray. By the same token[,] this would be the only instance where there is a substantial need to withhold that information from plaintiff's counsel. If the discrepancy would be the result of the plaintiff's untruthfulness, the substantial need for his counsel to know of the variance can hardly justify making the information available to him. On the other hand, if the discrepancy would result from misleading photography, the necessary background information should be made available to the plaintiff's attorney so the fraud can be exposed. It goes without saying that the means to impeach should not be the exclusive property of the defense. Any rule formulated, therefore, must balance the conflicting interests of the plaintiff against the conflicting interests of the defendant and protect both insofar as it is possible to do so. . . . [T]hese purposes can best be achieved by requiring the defense to disclose the

existence of surveillance films or be barred from showing them at trial.

*Ward v. CSX Transp., Inc.*, 161 F.R.D. 38, 40 (E.D.N.C. 1995). The Court is swayed by reasoning in *Ward* that, on balance, the interests of justice are best served by disclosure of the surveillance materials. Macy's concerns that plaintiffs may be aided by the disclosure, so that they conform their trial testimony to the surveillance video, are unconvincing. As set forth in *Ward*, "[d]efendant may insure the impeachment value of the surveillance by taking a video deposition prior to disclosure of the surveillance materials. In that deposition, defendant may carefully examine plaintiff about her injuries and disabilities and even require him to demonstrate the alleged limitations of motions on videotape. [6] Inconsistencies between that deposition and the surveillance materials can [then] be used to impeach the plaintiff at trial." *Ward*, 161 F.R.D. at 41.

As to the scope of the disclosure required, however, the Court

---

[6]  Macy's has taken videotaped depositions of both Jacqueline and William Orr. *See* doc. 53 (filing with the Court portions of their depositions). To the extent that Macy's did not require Jacqueline to demonstrate the alleged limitations imposed by her injuries (on video) and wishes to do so, the Court invites the parties to meet and confer and agree upon an acceptable date, time, and location to reopen the deposition for this limited purpose, prior to any disclosure of the surveillance materials.

agrees with Macy's that much of the materials prepared by its hired investigators may be protected work product, to the extent that it actually contains mental impressions, conclusions, opinions, and/or legal theories. Therefore, the Court **ORDERS** Macy's to produce the raw footage, photographs, and video recording of plaintiffs -- to the extent such materials *did not* capture any protected communications or mental impressions. If any portion of the surveillance materials did capture such communications or mental impressions (*i.e.*, one of the investigators is overheard discussing litigation strategy with defense counsel, or a photograph shows some handwritten notes summarizing that strategy), counsel may excise that portion and prepare a privilege log identifying why that portion has not been produced. Plaintiffs' motion to compel the production of Macy's surveillance documents is therefore **GRANTED IN PART**.

## B.     PROTECTIVE ORDER

Macy's served a subpoena *duces tecum* on Facebook, seeking plaintiffs' personal profile pages, Facebook friends, timeline posts, photographs, updates, comments, and messages from April 2, 2015 through the present. *See* doc. 44, Exh. B. Macy's contends that these

posts are discoverable and relevant to Jacqueline Orr's allegations of pain and suffering, including her allegation that her active lifestyle has been curtailed by her pain and that she has been unable to socialize, attend concerts, travel, or participate in activities with her husband and friends. Doc. 52. Plaintiffs seek a protective order quashing the subpoena. Doc. 44.

As a threshold matter, the Court must consider whether plaintiffs have standing to challenge the subpoenas at issue. They must assert a personal right or privilege with respect to the subject matter of the materials subpoenaed. *Stevenson v. Stanley Bostich, Inc.*, 201 F.R.D. 551, 555 n. 3 (N.D. Ga. 2001) (collecting cases). In that the photos and Facebook data pursued are personal to the plaintiffs, they have standing to oppose Macy's subpoena to Facebook. *See Crispin v. Christian Audiger, Inc.*, 717 F. Supp. 2d 965 (C.D. Cal. 2010) ("an individual has a personal right in information in his or her profile and inbox on a social networking site . . . sufficient to confer standing to move to quash a subpoena seeking such information."); *J.T. Shannon Lumber Co. v. Gilco Lumber, Inc.*, 2008 WL 3833216 at *1 (N.D. Miss. Aug.14, 2008) (party had standing to challenge subpoenas directed to

internet service providers, such as Microsoft, Yahoo, and Google). However, Macy's prevails here.

"Postings on Facebook and other social media present a unique challenge for courts, due to their relative novelty and their ability to be shared by or with someone besides the original poster." *Higgins v. Koch Dev't Corp.*, 2013 WL 336278 at *2 (S.D. Ind. July 5, 2013); *Palma v. Metro PCS Wireless, Inc.*, 18 F. Supp. 3d 1346, 1347 (M.D. Fla. 2014) ("Social media content is neither privileged nor protected by any right of privacy").

There is a split of authority in this area. Some courts require a threshold relevance showing, based on a plaintiff's publicly available profile, prior to compelling production of information from her private social media profile. *See Palma*, 18 F. Supp. 3d at 1347-48; *Tompkins v. Detroit Metro. Airport*, 278 F.R.D. 387, 388-89 (E.D. Mich. 2012) (denying discovery as overly broad where publicly available information was not inconsistent with the plaintiff's claims); *Thompson v. Autoliv ASP, Inc.*, 2012 WL 2342928 *4 (D. Nev. June 20, 2012) (allowing discovery where material obtained by defendant from plaintiff's public Facebook account negated her allegations that her social networking

site accounts were irrelevant); *Romano v. Steelcase, Inc.*, 907 N.Y.S. 2d 650, 653-57 (N.Y. Sup. Ct. 2010) (finding it reasonable to infer from the limited postings on the plaintiff's public social media profile pages that her private pages might contain material that was relevant to her claims). This showing is considered necessary because a "[d]efendant does not have a generalized right to rummage at will through information that [p]laintiff has limited from public view," and absent some "threshold showing that the requested information is reasonably calculated to lead to the discovery of admissible evidence," a "[d]efendant would be allowed to engage in the proverbial fishing expedition, in the hope that there might be something of relevance in [p]laintiff's Facebook account." *Tompkins*, 278 F.R.D. at 387-88.

The Court, however, is unconvinced that the Federal Rules of Civil Procedure require a "threshold showing" that relevant evidence already exists before a party can request production of that *same* relevant evidence. *See Giacchetto v. Patchogue-Medford Union Free Sch. Dist.*, 293 F.R.D. 112, 114 n. 1 (E.D.N.Y. 2013) (noting that the Federal Rules of Civil procedure "do not require a party to prove the existence of relevant material before requesting it" and concluding that following

such a rule would "improperly shield[ ] from discovery the information of Facebook users who do not share any information publicly.").

Because Jacqueline's physical condition and the Orrs' quality of life are both at issue in this case, *see* doc. 25 (Second Amended Complaint), plaintiffs' Facebook postings[7] reflecting physical capabilities and activities inconsistent with their injuries are relevant and discoverable. *Giacchetto*, 293 F.R.D. at 114; *Higgins*, 2013 WL 3366278 at * 2 (permitting production of plaintiffs' Facebook content that "may reveal relevant information as to the extent their injuries have impacted their 'enjoyment of life, ability to engage in outdoor activities, and employment,' along with their 'claims regarding permanent injuries, lack of pre-existing symptoms, and impairment of future earnings capacity.'"); *Howell v. Buckeye Ranch, Inc.*, 2012 WL 5265170 at *1 (S.D. Ohio Oct. 1, 2012) (permitting production of "interrogatories and document requests that seek information from the [social media] accounts that is relevant to the [parties'] claims and defenses"); *Davenport v. State Farm Mutual Automobile Ins. Co.*, 2012

_____

[7]   The Court understands "postings" to include status updates, profile information, messages, and photographs.

WL 555759 at *2 (M.D. Fla. Feb. 21, 2012) (ordering production of Facebook photographs depicting plaintiff since date of alleged accident since plaintiff's physical condition was at issue).[8]  Plaintiffs therefore are not entitled to a protective order quashing the subpoena issued to Facebook, Inc.

## C.   CONCLUSION

In sum, plaintiff's motions to compel production of incident reports (doc. 42) is **DENIED**, production of Macys' financial and surveillance records (doc. 55) is **GRANTED** in part, and Macy's motion to quash and for a protective order (doc. 59) is **DENIED** in part.  Macy's is therefore **ORDERED** to produce the raw surveillance footage/photographs/audio

---

[8]   Even were the Court to impose a "threshold showing," Macy's has submitted several images captured from plaintiffs' Facebook pages "which appear to show Plaintiffs attending social gatherings, dancing, and attending sporting events in a manner inconsistent with the quality of life allegations that they have made" and "show[ing] Jacquelyn Orr using her right arm in a manner arguably inconsistent with her alleged injuries and wearing clothing that her doctors contend would cause excruciating pain." Doc. 52, pp. 7-8; *see* doc. 52, Exh. A.

These photographs, captured prior to plaintiffs making their Facebook profiles private, are more than sufficient to meet any "threshold showing" required by other courts to demonstrate the existence of other potentially relevant information hidden from public view on plaintiffs' private profiles.

The Court makes no finding as to the timing of plaintiffs' changes to their profiles to private settings, but it notes that the possibility that a party might make their Facebook profile private for the explicit purpose of hiding any negative postings from discovery further militates in favor of declining to adopt any "threshold showing" requirement that would "require a party to prove the existence of relevant material before requesting it." *Giacchetto*, 293 F.R.D. at 114, n. 1.

taken of Jacqueline Orr, except those portions containing privileged work product.  In that case, those portions shall be excised (in the case of video or audio recording) or omitted from production (in the case of photographs), and a privilege log cataloguing the excised portions prepared and produced along with the surveillance materials.

Finally, plaintiffs' motion for a protective order quashing the subpoena to Facebook, Inc. (doc. 44) is **DENIED**.  Given the Complaint's allegations, the Court further concludes that Macy's sufficiently limited its request for: (1) all photographs posted by plaintiffs or in which they are tagged; (2) all comments to those photographs; (3) all posts by plaintiffs relating to social gatherings, sporting events, vacations, and other activities that plaintiffs contend they are unable to engage in or enjoy since the dressing room incident; and (4) any posts referencing their claimed injuries, damages, or loss of enjoyment of life, since April 2, 2015 through the present.  Doc. 52, p. 9.  Pursuant to Fed. R. Civ. P. 37(a)(5)(C), each party is to bear their own fees and costs.

**SO ORDERED,** this _24th_ day of October, 2016.

_J.R. Smith_
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA