## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| **JACQUELYN ORR and** | ) | |
| **WILLIAM ORR,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO. 416-52** |
| | ) | |
| **MACY'S RETAIL HOLDINGS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MOTION TO EXCLUDE EXPERT WITNESS TESTIMONY OF L. LAMAR BLOUNT, CPA/CFF AND INCORPORATED MEMORANDUM OF LAW

**COME NOW** the Plaintiffs in the above styled action and file this their

Motion to Exclude Expert Witness Testimony of L. Lamar Blount, CPA/CFF and

Incorporated Memorandum of Law as follows:

## FACTS

In the case at bar, Plaintiff's treating physician, Markus Niederwanger,

M.D., a board certified practicing physician specializing in PM&R and Pain

Management at Optim Orthopedics in Savannah, Georgia, has prescribed a course

of treatment that includes the implantation of a spinal cord stimulator to reduce

Plaintiff's pain.  (Ex 1 Markus Niederwanger, M.D.'s Expert Witness Report p.

12); (Ex 2 Markus Niederwanger, M.D.'s Amended Expert Witness Report p. 5).

In response, Defendant has disclosed L. Lamar Blount, a purported expert on the reasonableness of the Plaintiff's future medical bills[1], to dispute the reasonableness of the future cost of the spinal cord stimulator (Ex 4 Blount Expert Report p. 8).

In his expert report, Mr. Blount has offered the following opinions, among others, regarding Dr. Niederwanger's projected expenses for the spinal cord stimulator:

> 5.  The Plaintiff's projected Ambulatory Surgery Center charges (or Hospital, as stated by Dr. Plumly) for the "Trial" Spinal Cord Simulator are $69,000.  However, the 80th percentile of usual, customary and reasonable charges for the same type of outpatient ambulatory surgery center services in the Savannah area are only $17,979 or 36% of the Plaintiff's projected charge.
>
> 6.  The Plaintiff's projected Ambulatory Surgery Center charges (or Hospital, as stated by Dr. Plumly) for the "Permanent" Spinal Cord Simulator and insertion of the Pulse Generator are $119,660.  However, the 80th percentile of usual, customary and reasonable charges for the same type of outpatient ambulatory surgery center services in the Savannah area are only $48,865 or 41% of the Plaintiff's projected charge.
>
> 7.  Plaintiff's projected Ambulatory Surgery Center charges (or Hospital, as stated by Dr. Plumly) for both the "Trial" and "Permanent" Spinal Cord Stimulators are $188,660.  The Medical University of South Carolina – University Hospital reported that their average inpatient charge for DRG 029 – SPINAL PROCEDURES W CC OR SPINAL NEUROSTIMULATORS in 2015 was $79,307 or 42% of the Plaintiff's projected charges.
>
> 8.  The Georgia state-wide average charge for 87 cases reported in 2014 (the most recent year available) for DRG 029 – SPINAL PROCEDURES W CC OR SPINAL NEUROSTIMULATORS was $82,594 or 44% of the Plaintiff's projected charges. (Ex 4 p. 8).

---

[1] Mr. Blount has no opinion as to the reasonableness of Orr's past medical bills. (Ex 3 p. 57 Deposition of Blount).

In his expert report, Mr. Blount describes the method by which he reached the above conclusions as follows:  He compared the projected charge amounts for the ambulatory surgery center (also referred to as "facility charges") to usual, customary and reasonable amounts for those providers he deemed similar by researching the Reasonable Charge Data published by the U.S. Department of Veteran's Affairs, which publishes the 80th percentile of charges. (Ex 4 p. 5, ¶ 7). To discover the comparable hospital inpatient charges for the procedure, he first looked to Medtronic's commonly billed codes, effective January 2016, to determine the equivalent DRG (Diagnosis Related Group) and he then determined the most equivalent DRG to be MS -DRG 029 – SPINAL PROCEDURES W CC OR SPINAL NEUROSTIMULATORS. (Ex 4 p. 5, ¶ 8).   Mr. Blount then compared reported amounts charged by acute care hospitals in Georgia, South Carolina and North Florida for DRG 029 for reporting hospitals in 2015 as set forth in the American Hospital Directory.  (Ex 4 p. 5, ¶ 9).   Next, he compared charges for CPT (Current Procedural Codes) for hospitals in Savannah reporting outpatient CPT procedure codes 63650 or 63685 in 2015. (Ex 4 p. 5, ¶ 10).  He then compared the DRG Summary for Medicare Inpatient Prospective Payment Hospitals for 2014 in order to determine the statewide average charges for DRG 029.  (Ex 4 p. 5, ¶ 11).  Finally, he performed an online search for published studies on the cost of Spinal Cord Stimulator surgery procedures in professional

journals. (Ex 4 p. 5, ¶ 12).  Based upon this research, Mr. Blount determined that Plaintiff's local physician's projected charge for the recommended surgery is unreasonable.  (Ex 4 p. 8).

A critical reading of Mr. Blount's deposition testimony reveals that his methods are flawed and, therefore, unreliable: (1) Blount's opinions were prepared solely for this litigation (Ex 4 p.2); (2) Mr. Blount's methods are unreviewed as he has not submitted the methodology that he employed in this case for peer review (Ex 3 p. 39); and, (3) Mr. Blount cannot provide rate of error for his opinions (Ex 3 p. 39).

Moreover, Mr. Blount did not perform an independent survey of the physicians, hospitals and ambulatory surgery centers in the Savannah, Georgia area to determine the reasonable charges in the Savannah, Georgia area for the implantation of the spinal cord stimulator.  (Ex 3 pp. 55-56).  He did not speak with Mrs. Orr's doctors in formulating his opinion.  (Ex 3 pp. 88-89).

Mr. Blount's methodology for his opinion consists of sole reliance upon published data of charges for medical procedures from the U.S. Department of Veterans Affairs, Medicare/CMS,[2] the American Hospital Directory and four peer reviewed medical articles that do not discuss the reasonableness of the cost of spinal cord stimulators.  (Ex 3 pp. 56, 101, 149-150).  Mr. Blount does not know

---

[2]  CMS is the Center for Medicare and Medicaid Services.

the rate of error for the data contained in the Medicare, VA or American Hospital Directory data base. (Ex 3 p. 44)  These databases are all based on the Medicare claims paid file database which categorizes "all charges for all hospitals by diagnosis related group or DRG." (Ex 3 pp. 47, 48, 49, 68, 101).

In his deposition, Mr. Blount testified that he focused upon two different DRG's: 029 and 520[3] to form his opinion regarding the reasonability of the estimated cost of the spinal cord stimulator implantation surgery.  (Ex 3 p. 50). However, both of these DRG's include procedures that do not involve the implantation of a spinal cord stimulator and, therefore, the reported costs are not truly representative of the cost of spinal cord implantation surgery.  (Ex 3 p. 94-95, 100).

## ARGUMENT AND CITATION OF AUTHORITY

### A.  Legal Standard for the Admissibility of Expert Opinions.

Federal Rule of Evidence 702 provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the case.

---

[3]  DRG 520 was not disclosed or mentioned in Blount's expert report and should be excluded on this basis alone.  (Ex 3 p. 51). *Hamlett v. Carroll Fulmer Logistics Corp.*, 2016 U.S. Dist. LEXIS 46687 [*5-10] (S.D. Ga April 6, 2016).

In *Kuhmo Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S. Ct. 1167, 143 L.Ed. 2d 238 (1999) and *Daubert v. Merrell Dow Pharms.,* 509 U.S. 579, 113 S. Ct. 2786, 125 L.Ed. 2d 469 (1993), the Supreme Court held that the trial court must act as a "gatekeeper" to ensure that all expert testimony is both relevant and reliable. The importance of this gatekeeping function "cannot be overstated."  *Royal Marco Point 1 Condominium Ass'n v. QBE Ins. Corp*., 2011 U.S. Dist. LEXIS 14521, 2011 WL 47056 *3 (M.D. Fla. 2011) *citing, U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (*en banc)).*

In determining the admissibility of expert testimony under Rule 702, courts must apply a rigorous three-part inquiry.  *Frazier*, 387 F.3d at 1260.  "Expert testimony is admissible if (1) the expert is qualified to testify on the topic at issue, (2) the methodology used by the expert is sufficiently reliable, and (3) the testimony will assist the trier of fact."  *Club Car, Inc., v. Club Car (Quebec) Import, Inc.,* 362 F.3d 775, 780 (11th Cir. 2004).  "The burden of laying a proper foundation for the admissibility of an expert's testimony is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence."  *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1261 (11th Cir. 2004).  It is important to note that "any step that renders the [expert's] analysis unreliable under the *Daubert* facts renders the expert's testimony inadmissible."  *McClain v. Metabolite International, Inc.,* 401 F.3d 1233, 1245 (11th Cir. 2005).  This is

because "[e]xpert testimony may be assigned a talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." *Frazier*, 387 F.3d at 1263.

As the following makes clear, Defendant has failed to sustain its burden of proving by a preponderance of the evidence that its expert's opinion regarding the charges related to the spinal cord stimulator implantation satisfy *Daubert*. Specifically, Defendant has proven neither that Mr. Blount's opinion is based upon reliable methodology nor that Mr. Blount's testimony will assist the trier of fact in this case.

**B. <u>Defendant has failed to sustain its burden of proving that Mr. Blount's opinion is based upon reliable methodology.</u>**

The reliability prong of Rule 702 requires a court to independently analyze each step in the logic leading to the expert's conclusions; if the court determines that any step in the expert's chain of logic is unreliable, his entire opinion must be excluded. *McClain*, 401 F.3d at 1245. In determining reliability, a court may consider the following non-exclusive factors: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and, (4) whether the technique is generally accepted in the scientific community." *See McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256

(11th Cir. 2002) *citing, Daubert*, 509 U.S. at 593-594.   While these factors are not a "definitive checklist," the expert's testimony must be based on "good grounds" *Daubert*, 509 U.S. at 590, 593, and "leaps of faith" unsupported by good science preclude the admission of the expert's testimony.  *Rider v. Sandoz Pharmaceuticals*, 295 F.3d 1194, 1202 (11th Cir. 2002).

In the case at bar, Mr. Blount's opinion regarding the reasonableness of the facility cost associated with the spinal cord stimulator recommended by Plaintiff's physician fails to meet the *Daubert* reliability factors, as well as the more general "good grounds" test.

1. **Mr. Blount's opinions violate two of the four criteria set forth in _Daubert_.**

Initially, it is important to note that Mr. Blount has admitted that his methodology does not satisfy two of the four factors set forth in *Daubert* and outlined *supra*: (1)  Mr. Blount has not submitted the methodology that he employed in this case for peer review (Ex 3 p. 39) and (2) Mr. Blount does not know the rate of error for his opinions or for the data contained in the databases that he relied upon in formulating his conclusion. (Ex 3 pp. 39, 44).

2. **Mr. Blount's opinions are also unreliable because they do not satisfy the more general "good grounds" test.**

It is crucial to note that, in addition to his failure to satisfy two of the four *Daubert* criteria set forth above, Mr. Blount's methodology is not based on "good grounds" and has not been subjected to the necessary intellectual rigor.

In formulating his opinion that the cost of the spinal cord stimulator surgery is unreasonably high, Mr. Blount did not perform an independent survey of the physicians, hospitals and ambulatory surgery centers in the Savannah, Georgia area to determine the reasonable charges in the Savannah, Georgia area for the implantation of the spinal cord stimulator. (Ex 3 pp. 55-56). Further, Mr. Blount did not speak with Mrs. Orr's doctors. (Ex 3 pp. 88-89).

Rather, Mr. Blount relied solely on published data of charges for medical procedures from the U.S. Department of Veterans Affairs, Medicare/CMS, the American Hospital Directory and four peer reviewed medical articles. (Ex 3 pp. 56, 101, 149-150). However, Mr. Blount's exclusive use of these sources does not constitute reliable methodology because (a) the Medicare database information for DRG 029 contains charges for surgeries that do not include spinal cord stimulators; (b) likewise, DRG 520 contains the same flaw of commingled medical charges unrelated to the implantation of a spinal cord stimulator; (c) the Medicare/CMS database is severely limited in the scope of the data contained therein; (d) the Veterans Affairs Outpatient Facility Reasonable Charge Data does not provide a

reliable methodology; and, (e) the peer-reviewed medical journal articles relied

upon by Mr. Blount are also unsupportive of his methodology.

    **a.** **The Medicare Database Information for DRG 029 relied on by Mr. Blount contains charges for medical services unrelated to spinal cord stimulators commingled into the database charge amounts.**

As discussed *supra*, Mr. Blount relied upon the published data of charges for

medical procedures from both the U.S. Department of Veteran's Affairs and the

American Hospital Directory.   The Medicare/CMS database is the source of data

for both of these reports. (Ex 3 pp. 47, 49, 68). In turn, the Medicare/CMS data

comes from the Medicare claims paid file database.  (Ex 3 p. 48).

The Medicare claims file database that is the source of the data used by Mr.

Blount classifies "all charges for all hospitals by DRG." (Ex 3 p. 47, 49).  The

method by which Mr. Blount formed his opinion was to compare the charges

contained in two different DRG's, 029 and 520, to the facility charge stated by Dr.

Niederwanger.   (Ex 3 p. 50).

However, Mr. Blount's reliance on DRG 029 in his attempt to make an

apples to apples comparison to the cost of the spinal cord implantation surgery is

fatally flawed.  DRG 029 applies to "spinal procedures W CC or spinal

neurostimulators[4]" and, therefore, clearly encompasses medical procedures that do

not include the implantation of a spinal cord stimulator.  (Ex 3 p. 93 and Exhibit 76

---

[4]  CC is "defined as either a complication or comorbidity." (Exhibit 5 CMS Draft ICD-10-CM/PCS MS-DRGv28 Definitions Manual).

to Blount deposition attached as Ex 3).  Even Mr. Blount concedes that DRG 029

could include procedures that do not involve a spinal cord stimulator.  (Ex 3 pp.

93-94, 100).  In short, the DRG 029 data used by Mr. Blount to compare to the

projected cost of the spinal cord stimulator surgery does not distinguish between

medical charges for procedures that involved the implantation of a spinal cord

stimulator and those that did not.  Thus, Mr. Blount engaged in an apples to

oranges comparison rather than the required apples to apples comparison.

 The failure to limit the comparison to only those procedures including

implantation of a spinal cord stimulator is fatal because, as Mr. Blount has

admitted, he does not know if the charges for procedures involving a spinal cord

stimulator are higher or lower than the charges for procedure that do not involve a

spinal cord stimulator.  (Ex 3 p. 94).  Using the University of Alabama Hospital[5]

DRG 029 line item entry on Exhibit 76 to Blount's deposition as an example,

Blount cannot say how many of the 13 DRG 029 procedures reported by this

particular hospital were for the implantation of a spinal cord stimulator.  (Ex 3 pp.

---

[5] Blount cannot point to a specific Savannah hospital that has DRG 029 charges in
the Medicare database.  (Ex 3 pp. 50, 69-70, 71).  In fact, the hospital closest to
Savannah with a DRG 029 entry is the Medical University of South Carolina in
Charleston, South Carolina which is approximately 2.5 hours away from Savannah
by car.  (Ex 3 pp . 50, 51).  Blount does not "necessarily" consider the Medical
University of South Carolina to be in the Savannah, Georgia area.  (Ex 3 p. 50).

94-95).  There could as few as 0 spinal cord stimulator implantation charges or as many as 13 contained within this DRG.

In fact, Mr. Blount cannot identify how many of the procedures identified in this DRG included a spinal stimulator implantation because he does not have the underlying data that makes up the DRG 029 data entries.  (Ex 3 p. 95).  To the extent that there are non-spinal cord implantation charges on this DRG 029 line item for the University of Alabama Hospital, Mr. Blount does not know if those charges would be more or less that the $98,350.15 listed on Exhibit 76.  (Ex 3 pp. 95-96).  Further, Mr. Blount cannot say how much these other non-spinal cord stimulator implantation charges would skew the $98,000 medical fee charge for this particular hospital because he does not have the underlying data that makes up DRG 029.  (Ex 3 p. 96).

The problems arising from Mr. Blount's use of DRG 029 from the University of Alabama Hospital data regarding for comparison purposes is present in all of the other DRG 029 data entries from all of the other hospitals in the Medicare database.  In other words, the DRG 029 data from all of the hospitals commingle procedures involving the implantation of a spinal cord stimulator with procedures that do not involve a spinal cord stimulator in the same fashion as the University of Alabama Hospital DRG 029.

Likewise, this very same flaw exists with Mr. Blount's use of the CMS DRG 029 statewide data for Georgia to support his opinion regarding the reasonableness of the charges for Plaintiff's future spinal cord stimulator surgery.   (Ex 3 p. 95).

Based upon the foregoing, it is clear that Mr. Blount's reliance upon the data collected under the umbrella of DRG 029 is not limited to procedures involving spinal cord stimulator implantation and, therefore, Mr. Blount's opinion is not based upon an apples to apples comparison with the projected charge for the Plaintiff's recommended spinal cord implantation surgery.

Since Blount has based his opinion on data that does not support his opinions, he has used a flawed methodology and his opinion as to the reasonableness of the cost of the ambulatory surgery center charges for the implantation of the spinal cord stimulator must be excluded.  *J & V Development, Inc., v. Athens-Clark County*, 387 F. Supp. 2d 1214, 1225-1226 (M.D. Ga 2005)

### b. **DRG 520 contains the same flaw of commingled medical charges unrelated to the implantation of a spinal cord stimulator.**

DRG 520, the second diagnosis related group used by Mr. Blount to compare to the projected facility charges for Plaintiff's future spinal cord stimulator implant surgery, is a classification referring to back and neck procedures except spinal fusion W/O CC/MCC[6] and is not a reference to a spinal cord

---

[6]  MCC is defined as "a major complication or comorbidity." (Ex 5 CMS Draft ICD-10-CM/PCS MS-DRGv28 Definitions Manual).

stimulator.  (Ex 3 p. 51); (Ex 6 CMS Draft ICD-10-CM/PCS MS-DRGv32 Definitions Manual p. 1).  Blount's reliance on DRG 520 is flawed for the very same reason as his reliance on DRG 029.  As with DRG 029, Mr. Blount is unable to identify how many of the DRG 520 procedures included the implantation of a spinal cord stimulator because within that particular DRG a specific procedure may or may not include "a specific neurostimulator device."  (Ex 3 p.100).

In fact, a review of CMS literature on DRG 520 indicates that there are a multitude of different musculoskeletal back and neck procedures which would all have their own different billing charge.  (Ex 6 CMS Draft ICD-10-CM/PCS MS-DRGv32 Definitions Manual).  A closer review of DRG 520 reveals that this DRG does not even involve the use of neurostimulator or spinal cord stimulator.  (Ex 6 CMS Draft ICD-10-CM/PCS MS-DRGv32 Definitions Manual); (Ex 3 p. 51). **Even more troublesome is that Mr. Blount admitted in his deposition that he does not know if DRG 520 applies to Mrs. Orr "in any way shape or form."** (Ex 3 p. 53).

Clearly, in comparing the data included in DRG 520 to the projected charge for the Plaintiff's recommended spinal cord stimulator implantation surgery, Mr. Blount is engaging once more in a flawed apples to oranges comparison (which is the likely reason that Mr. Blount did not include this DRG in his expert report).

The source of Mr. Blount's belief that some procedures under DRG 520 may include the implantation of a spinal cord stimulator is a publication from Medtronic, a manufacturer of spinal cord stimulators.  (Ex 3 p. 52).  A review of the Medtronic document reveals that, according to Medtronic, DRG 520 applies to musculoskeletal disorders.  (Ex 3 pp. 52-53 and Exhibit 72, p.13 to Blount deposition attached as Ex 3).  However, Mr. Blount does not know if Mrs. Orr has a musculoskeletal disorder; and further, Mr. Blount does not know if DRG 520 applies in any way shape or form to Jackie Orr.  (Ex 3 p. 53).  In fact, Mrs. Orr does not have a musculoskeletal disorder; rather, she suffers from RSD, also known as CRPS.  (Ex 7 Deposition of Dr. Niederwanger pp. 22, 63, 75,77, 82).  It cannot be disputed that CRPS/RSD is not a musculoskeletal disorder (Ex 7 p. 22).

Since DRG 520 does not include procedures involving a spinal cord stimulator and, further, refers to treatment for musculoskeletal disorders rather than RSD, it is a flawed and unreliable source of information necessary to perform a true apples to apples comparison and Mr. Blount's opinions must be excluded pursuant to *J&V Development, supra.*

### c.  The Medicare/CMS Database is severely limited in the scope of the data contained therein.

Additional problems arise from Mr. Blount's reliance on the Medicare/CMS database for DRGs 029 and 520.   Exhibit 74 to Mr. Blount's deposition is an

excerpt from the Medicare/CMS database relied upon by Mr. Blount that describes

the database, including the information contained therein.  (Ex 3 pp. 78-79).

Importantly, Exhibit 74 also outlines the severe limitations of this database.  Under

the heading "Data Limitations" is the following:

> … The data in the inpatient PUF may not be representative of a
> hospital's entire population served.  The data in the file only has information
> for Medicare beneficiaries with Part A fee-for-service coverage, but
> hospitals typically treat many other patients who do not have that form of
> coverage.  The inpatient PUF does not have any information on patients who
> are not covered by Medicare, such as those with coverage from other federal
> programs, (like Federal Employees Health Benefit Program or Tricare), or
> those with private health insurance (such as an individual policy or
> employer-sponsored coverage), or even those who are uninsured.  Even
> within Medicare, the inpatient PUF does not include information for any
> patients who are enrolled in any form of Medicare Advantage plan. . . The
> file only contains cost and utilization information, and for the reasons
> described in the preceding paragraph, the volume of procedures represented
> may not be fully inclusive of all procedures performed by the hospital.

(Ex 3 pp. 78-80 and Exhibit 74 p. 5 ¶. 6 to Blount Deposition attached as Ex 3).

As the document states on its face, the charges captured in the Medicare/CMS

database are those relating to a small subset of patients and "may not be fully

inclusive of all procedures performed by the hospital" because it excludes

information from any private health insurance plan, any information regarding

procedures performed on uninsured persons, any information for patients enrolled

in Medicare Advantage, and any information regarding persons enrolled in a

different federal healthcare plan.  Considering the narrowness of the retrieved data,

its reliability for the purposes used is highly questionable.

**d.** **The Veterans Affairs Outpatient Facility Reasonable Charge Data does not provide a basis for a reliable methodology for Mr. Blount's opinions.**

To the extent that Mr. Blount relies on U.S. Department of Veterans Affairs Outpatient Facility Reasonable Charge Data for 2016, such reliance is also flawed. (Ex 3 pp. 68, 149).  The VA Outpatient Facility Reasonable Charge Data for 2016 is an average of charges nationwide.  (See Ex 73, p. 4, to Blount Deposition attached as Ex 3).  Mr. Blount concedes that medical charges vary greatly around the country, but he cannot say how many data entries in the VA database came from the Savannah, Georgia area.  (Ex 3 pp. 68-69, 96-98).  It is possible that none of the data came from the Savannah, Georgia area.  (Ex 3 p. 69).  Thus, the logical conclusion is that the reasonable charge data for 2016, while possibly reflecting a national average, does not reflect the average charge data for an area reasonably close to Savannah, Georgia.

Additionally, Mr. Blount does not know of any hospital or ambulatory surgery center in Georgia that uses the VA hospital data to determine usual, customary and reasonable medical charges other than government run VA hospitals.  (Ex 3 p. 72).  Mr. Blount also admits that he does not know what most hospitals or ambulatory surgery centers use as their basis for charges.  (Ex 3 p. 72).

Mr. Blount does not know if either the physicians or the ambulatory surgery center that will be implanting the spinal cord stimulator in this case accepts VA

patients or if Plaintiff Jackie Orr receives VA medical benefits, Medicare benefits, Medicaid benefits or private health insurance benefits.  (Ex 3 pp. 56, 73).

Thus, the nationwide average taken from the VA Outpatient Facility Reasonable Charge Data does not support Mr. Blount's opinion in this case that the proposed facility charges are unreasonably high for this area.

### e. **The peer reviewed medical journal articles relied on by Mr. Blount do not support his methodology.**

None of the four peer reviewed articles relied upon by Mr. Blount express an opinion as to the reasonableness of the spinal cord stimulator charges referenced therein.  (Ex 3 p. 150).

The first article: *Spinal Cord Stimulation* by North, *et al* was written in 2006.  (Ex 3 p. 108; and Exhibit 81, p. 361, to Blount deposition attached as Ex 3). It reviewed the medical costs of 42 patients at Johns Hopkins Hospital in Baltimore, Maryland incurred between 1991 and 1995, approximately 21 to 25 years ago.  (Ex 3 pp. 109-110 and Exhibit 81, p.362, to Blount deposition attached as Ex 3).  Importantly this article discusses costs, i.e. reimbursement or payments, and not charges.  Blount's opinions, on the other hand, look only to what is charged and not what is reimbursed.  (Ex 3 pp. 56-55).  Therefore, this article is not relevant to Mr. Blount's opinions in this case.

The second article relied upon by Mr. Blount: *Cost Benefit of Neurostimulation for Chronic Pain* by Mekhail, *et al* was written in 2004, over a

decade ago.  (Ex 3 p. 112; Exhibit 82, p.462, to Blount deposition attached as Ex

3).  This article reviewed 222 patient reimbursements from 1990 to 1998 at the

Cleveland Clinic approximately 18 to 26 years ago. (Ex 3 p. 113 and Exhibit 82, p.

462 to Blount deposition attached as Ex 3).  This article, like the article discussed,

*supra,* addresses reimbursements or payments as opposed to charges while Mr.

Blount has opined specifically on the amount charged as opposed to the amount

reimbursed.  (Ex 3 p. 56-55; Exhibit 82, p. 462 to Blount's Deposition attached as

Ex 3).  Thus, this article is not supportive of Mr. Blount's opinion regarding the

reasonableness of the projected charge for the Spinal Cord Stimulation surgery.

    The third article: *Treatment of Spinal Cord Pain with Spinal Cord Stimulation*

by Kumar *et al* was written in 2001, over fifteen years ago. (Ex 3 p. 123; Exhibit

83 p. 106 to Blount deposition attached as Ex 3).  This article looked at 350

patients who underwent the implantation of a spinal cord stimulator in the 20 years

prior to 2001 and, therefore, the data contained therein was up to 36 years old.  The

cost data was derived from Canada and not from the United States despite the fact

that Mr. Blount agrees that the cost of medical care in Canada is different from the

cost of medical care in the United States.  (Ex 3 pp. 124-126 and Exhibit 83, pp.

107-108 to Blount deposition attached as Ex 3).  Even more troubling is that Mr.

Blount has not undertaken any study to determine the relative difference in pricing

and costs for medical care in Canada and the United States.  (Ex 3 p. 127 attached

as Ex 3).  This is despite the fact that the article states on its face:

> The absolute derived costs may not be directly comparable to those
> encountered and may be lower than those in the United States or Europe.
> This difference is a consequence of the nature of the medical delivery
> system in Canada and differences in pricing by the manufacturer in
> different countries which limit absolute costs.

(Ex 3 pp. 126-127; Exhibit 83 p. 114-115 to Blount deposition attached as

Ex 3).  Therefore, this article does not support Mr. Blount's opinions in this case.

Additionally, this article is not supportive of Mr. Blount's opinions because it

discusses costs, i.e. reimbursement or payments and not charges.  (Exhibit 83 pp.

106-107 to Blount deposition attached hereto as Ex 3).  Thus, since Mr. Blount's

opinions look only to what is charged and not what is reimbursed, this article does

not support his opinions in this case. (Ex 3 pp. 55-56).

The fourth and last article: *Financial Impact of Spinal Cord Stimulation* by

Kumar, *et al* was published in 2009.  (Exhibit 84 p. 564 to Blount deposition

attached as Ex 3).  It looks at the cost of a spinal cord stimulator during the period

between 1995 and 2006 in both Canada and the United States.  (Ex 3 p. 130).  The

article relies upon information from the state of Texas for its insights regarding the

United States.  (Ex 3 p. 131).  Mr. Blount does not know if the Texas medical costs

are the same as Savannah, Georgia medical charges for the same services.  (Ex 3 p.

132).  Additionally, this article is not supportive of Mr. Blount's opinions because

it discusses costs, i.e. reimbursement or payments and not charges.  (Exhibit 84 pp.

564-565 to Blount deposition attached hereto as Ex 3).  Thus, since Mr. Blount's

opinions look only to what is charged and not what is reimbursed, this article does

not support his opinions in this case. (Ex 3 pp. 55-56).

### Mr. Blount's opinions do not fit the facts of this case.

The "relevancy" prong of Rule 702 requires that an expert's theory

adequately "fit" the facts of the case. *See Daubert*, 509 U.S. at 591; *see also,*

*McDowell  v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004).

> Expert testimony. . . does not help the trier of fact if it fails to "fit"
> with the facts of the case.  This occurs when a large analytical leap must be
> made between the facts and the opinion.  The court may exclude otherwise
> reliable testimony if it does not have sufficient bearing on the issue at hand.

*Padgett v. Kmart Corp.*, 2016 U.S. Dist. LEXIS 88734 [9] (S.D. Ga July 18, 2016)

(citations and quotations omitted); see *Lawrey v. Good Samaritan Hosp.*, 751 F.3d

947 (8th Cir 2014)(Affirming District Court's limiting testimony of medical expert

where expert's opinion did not fit the facts of the case);  *Concord Boat Corp. v.*

*Brunswick Corp.*, 207 F.3d 1039, 1056 (8th Cir. 2000) ("Even a theory that might

meet certain *Daubert* factors, such as peer review and publication, testing, known

or potential error rate, and general acceptance, should not be admitted if it does not

apply to the specific facts of the case.").

For the reasons set forth more fully in Section B, *supra*, Mr. Blount's

opinions are based upon data which does not "fit this case."  The Medicare

database information for DRG 029 contains charges for surgeries that do not include spinal cord stimulators and, therefore, is not relevant. (See subsection A(2)(a) *supra).*    Likewise, the charges included in DRG 520 contain the same flaw of commingled medical charges unrelated to the implantation of a spinal cord stimulator and, therefore, are irrelevant. (See subsection A(2)(b) *supra).*    The Medicare/CMS database is severely limited in the scope of the data contained therein and, on its face, states that it may not be fully inclusive of all procedures formed by the hospital. (See subsection A(2)(c) *supra*).  Further, the Veterans Affairs Outpatient Facility Reasonable Charge Data provides a nationwide average for charges despite the fact that charges vary greatly around the country and Mr. Blount is unable to determine if any of the data used in that study came from the Savannah, Georgia, area.  (See subsection A(2)(d) *supra*).   Finally, the peer-reviewed medical journal articles relied upon by Mr. Blount contain data and conclusions that do not fit the case at bar. (See subsection A(2)(e)).

When Mr. Blount's opinions regarding the reasonableness ambulatory surgery center charges for the spinal cord stimulator are scrutinized, one is left with the *ipse dixit* of Mr. Blount which is not a basis for admissible expert testimony under FRE 702.   *Padgett,* 2016 U.S. Dist. LEXIS 88734 (July 18, 2016 S.D. Ga). In the present case,  there is simply too great of an analytical leap between the data and the opinion offered for the opinion to be admissible.

## CONCLUSION

A critical look at Mr. Blount's deposition testimony makes clear that Mr. Blount is not opining that the projected facility cost of Mrs. Orr's future spinal cord stimulator implantation surgery is unreasonably high.  Mr. Blount went to great pains during his deposition to make clear that he was merely testifying that the projected charges were in excess of the published charges that he was able to uncover through his research.  (Ex 3 pp. 82, 105).   However, the published charges (or data) relied upon by Mr. Blount do not provide an apples to apples comparison.

Accordingly, Defendant has failed to sustain its burden of proving by a preponderance of the evidence that Mr. Blount's opinion that the cost of the facility charges related to the spinal cord stimulator are unreasonable.  Specifically, Defendant has proven neither that Mr. Blount's opinion is based upon reliable methodology nor that Mr. Blount's testimony is relevant and will assist the trier of fact.  Therefore, Plaintiffs request that the expert witness testimony of L. Lamar Blount, CPA/CFF be excluded.

This 7th day of December, 2016.

/s/R. Scot Kraeuter
R. Scot Kraeuter
Georgia Bar Number: 428960
*Attorney for Plaintiffs*

Johnson, Kraeuter & Dunn, LLC.
104 West State Street, Suite 200
Savannah, Georgia  31401
(912) 721-9844

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| **JACQUELYN ORR and** | ) | |
| **WILLIAM ORR,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO. 416-52** |
| | ) | |
| **MACY'S RETAIL HOLDINGS, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

## CERTIFICATE OF SERVICE

This is to certify that I am counsel for the Plaintiffs and that I have this day served the foregoing pleading upon all parties to this matter by filing with the Court's CM/ECF system, which will automatically e-mail notification of same to the following counsel of record:

Stevan A. Miller, Esq.
Lisa R. Richardson, Esq.
Drew, Eckl & Farnham, LLP
Post Office Box 7600
Atlanta, Georgia 30357-0600
lrichardson@deflaw.com
**dulcieb@deflaw.com**
smiller@deflaw.com

Jeffrey S. Ward, Esq.
Garret W. Meader, Esq.
Drew Eckl & Farnham
77 Gloucester Street
Suite 305
Brunswick, Georgia 31520
jward@deflaw.com
gmeader@deflaw.com

This 7th day of December, 2016.

/s/R. Scot Kraeuter
R. Scot Kraeuter
Georgia Bar No. 428960
*Attorney for Plaintiffs*

Johnson, Kraeuter & Dunn, LLC
104 West State Street, Suite 200
Savannah, Georgia 31401
(912) 721-9844
Scot@jkdlawfirm.com