# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

JACQUELYN ORR and WILLIAM ORR,

      Plaintiffs,

    v.

MACY'S RETAIL HOLDINGS, INC.,

      Defendant.

CIVIL ACTION NO.: 4:16-cv-52

## <u>ORDER</u>

Plaintiffs Jacquelyn Orr ("Mrs. Orr") and William Orr ("Mr. Orr") filed this suit against Defendant Macy's Retail Holdings, Inc. ("Macy's") arising from injuries sustained by Mrs. Orr while shopping at a Macy's store in Savannah, Georgia. (Doc. 1-1.) Plaintiffs originally filed this suit in the State Court of Chatham County, (<u>id.</u>), and Defendant subsequently removed to this Court, (doc. 1). Plaintiffs filed an Amended Complaint, (doc. 19), and a Second Amended Complaint, (doc. 25). Defendant then filed an Answer. (Doc. 26.) The case is presently before the Court on Defendant's Motion to Exclude or Strike Expert Testimony, (doc. 84), Plaintiffs' Motion to Introduce Evidence of Other Similar Incidents, (doc. 77), Defendant's Motion for Summary Judgment, (doc. 78), and Plaintiffs' Request for Oral Argument, (doc. 110). For the reasons set forth below, the Court **GRANTS** Defendant's Motion to Exclude Expert Testimony, **GRANTS in part and DENIES in part** Plaintiffs' Motion to Introduce Evidence, **DENIES** Defendant's Motion for Summary Judgment, and **DENIES** Plaintiffs' Request for Oral Argument.

## I. Macy's Fitting Rooms

The incident in this case took place at the Macy's department store in Oglethorpe Mall, located in Savannah, Georgia, on April 2, 2015. Macy's has fitting rooms available throughout the store for customers to try on the store's merchandise, and the design of these rooms varies from department to department. Two different fitting-room designs are relevant to this case—the "top hinge" and "jamb hinge" designs.

Mrs. Orr was injured in a jamb hinge fitting room. In this the type of room, doors are attached to a large, multi–stall frame with various component parts. (Doc. 92-12, p. 33; doc. 92-29.) Each pair of stalls has a privacy panel that is approximately two feet wide and sits perpendicular to the wall separating one stall from the next. (Doc. 92-29, p. 2.) Before the fitting-room doors are attached to the frame, they are attached to a metal "support post" by two hinges—one at the top and one at the bottom. Id. The doors are then installed by screwing the metal support post to the privacy panel. (Doc. 92-12, p. 33.)

The second type of fitting room, the "top hinge" model, features a single, private room with a door that is mounted directly onto a wooden doorframe via hinges with screws. (Id. at pp. 34–35.) There are no support posts and no privacy panels in the top hinge design.

## II. The Orr Incident

On April 2, 2015, Mrs. Orr visited the women's dress department at Macy's. (Doc. 25, p. 2.) When Mrs. Orr attempted to enter a fitting room stall, the door and the support post to which

---

[1] The recited facts represent the facts in the record with all reasonable inferences drawn in the light most favorable to Plaintiffs, the non-moving parties with regard to the summary judgment motion. See Peppers v. Cobb County, 835 F.3d 1289, 1295 (11th Cir. 2016).

it was attached[2] fell onto her, striking her arm and shoulder before landing on her foot.  (Id.; doc. 82-1, pp. 51–52; doc. 82-2, p. 92.)  According to Mrs. Orr, the door came to rest on the ground (and partially on her foot) "long ways standing up."  (Doc. 82-1, p. 52.)  No one other than Mrs. Orr saw the door fall.  (Doc. 92-3, p. 4.)  Judith Pecone, an employee in the dress department, was the first person to respond.  (Id.)  At some point, the fallen door was set aside against a wall.  (Doc. 82-1, p. 52; doc 92-29.)  Ms. Pecone contacted Ms. Donaldson, the women's dress department manager, who then blocked off the fitting room with an "out of order" sign.  (Doc. 92-5, p. 34.)  Ericka Guzman ("Ms. Guzman"), another Macy's employee, also responded to the incident shortly thereafter and observed the fallen door.[3]  (Doc. 92, p. 2.)  Ms. Guzman filled out a brief incident report form.  (Id. at pp. 3–4; doc. 92-29.)

Ms. Kearney, the sales department supervisor, was out of the store when Mrs. Orr's incident occurred.  (Doc. 92-9, p. 10.)  When Ms. Kearney returned, Ms. Guzman led her to the fitting room where she saw the door laying on the floor.  The two women did not discuss the incident.  (Id. at pp. 11–12, 13.)  After receiving Ms. Guzman's incident report, Ms. Kearney spoke with other employees working in departments near the women's fitting room to ensure they knew to check the fitting rooms for disrepair, and also to ensure their familiarity with the reporting procedures should another incident occur.  (Id. at pp. 13, 17–18.)  She did not recommend any changes to Macy's standard procedures nor did she conduct any additional investigation of her own.  (Id. at p. 13.)

---

[2]  Plaintiff asserts that the door and "door frame" fell on her.  Based on the evidence in the record, the Court takes this to mean the door and the support post.

[3]  At her deposition, Ms. Guzman stated that she observed some screws had come out of the door's hinge. (Doc. 92-4, pp. 9–10.)  This, however, is not material.  As explained above, the door is attached to the support post by hinges, and all parties agree that the door and support post were at least partially connected when the support post disconnected from the privacy panel.

When Mr. Rutland, the head of maintenance at the store, reattached the door later that month,[4] he noted that at least one of the screws connecting the support post and the privacy panel was missing. (Doc. 82-2, p. 91.) However, he did not know what caused the screws to come out and did not make any determination to that effect. (Id. at pp. 94–95.)

During discovery, Macy's produced evidence regarding two prior incidents involving dressing room doors that had fallen and injured customers within the year prior to Mrs. Orr's incident. These are described in detail in "Discussion" Section II, infra, wherein the Court addresses Plaintiffs' Motion to Introduce Evidence concerning both of these prior incidents.

### III. Macy's Inspection Procedures and Incident Protocol

Three types of Macy's safety inspections are relevant to this action: (1) monthly preventative maintenance, (2) monthly "Hazard Assessment Safety Inspections," and (3) sales associate inspections. (Doc. 78, pp. 4–7.)

Macy's monthly preventative maintenance was largely performed by Mr. Rutland. (Doc. 92, p. 18.) A computer-based work system generated and assigned his work orders, and an order requiring fitting room inspections was generated monthly. (Id.) The orders contained the start date, a list of specific items to check within the fitting rooms, and a number assigned to each specific task. When Mr. Rutland finished the assignments, the orders reflected the date of completion. (Doc. 92-20.) The standard fitting room order specified that Mr. Rutland should inspect the fitting rooms for "proper operation," but the order did not explicitly provide that he was required to check hinges or screws. (Doc. 92, p. 18; doc. 92-12, p. 23.) According to Sandra Wade, Macy's corporate representative, Mr. Rutland was considered a "safety inspector" pursuant to the company's written policy. This meant Mr. Rutland was expected to receive

---

[4] Mr. Rutland testified that he repaired this door on April 20th, 2014. (Doc. 98-1, pp. 17–18.)

annual documented safety inspection training—training he did not receive.  (Doc. 92-10, p. 20; doc. 104-1.)

In addition to Mr. Rutland's monthly maintenance inspections, Macy's performed monthly "Hazard Assessment Safety Inspections" ("HASI"), which involved employee inspectors using itemized forms to identify potential safety hazards.  (Doc. 92, p. 17.)  The form has categories encompassing broad sections of the store, but fitting rooms or fitting room doors are not specifically mentioned.[5]  (Doc. 104, p. 7; doc. 92-36.)  Pursuant to Macy's corporate policy, the store had its own safety committee whose members were tasked with carrying out these inspections.  (Doc. 92, p. 17.)  No individual member of the committee was to complete more than six inspections per twelve-month period.  (Id.; doc. 92-18.)  However, Ms. Wade completed nine of the twelve inspections in the year leading up to Mrs. Orr's accident.  (Doc. 92-10, pp. 31–32.)

Finally, Macy's utilized daily fitting room inspections to ensure cleanliness.  (Doc. 104, p. 8.)  Sales associates were required to check fitting rooms at least once per hour to clear them of clothing, and the inspections were recorded on a standard form.  (Doc. 92-22.)  Macy's did not produce the inspection forms from the three days preceding or the day of Mrs. Orr's incident.  (Doc. 109, p. 13.)

## V.  Overview of Claims

Plaintiffs present three theories of liability.  (Doc. 25.)  First, Plaintiffs allege Defendant was negligent in inspecting and maintaining its premises.  (Id. at 4.)  Had Defendant exercised ordinary and reasonable care in its maintenance as required by Georgia law, Plaintiffs aver Mrs. Orr would not have been injured.  (Id.)  Second, Plaintiffs request damages for Mr. Orr's alleged

---

[5]  The categories are: Floor Conditions; Display/Fixtures; Equipment; Safe Work Practices; Life Safety/Property; Inspection Logs; and Miscellaneous.  (Doc. 104, p. 7.)

loss of consortium caused by the accident. (Id. at 6.) Finally, Plaintiffs request punitive damages under the theory that Defendant knew or should have known of the risk to Mrs. Orr yet failed to act on this knowledge. (Id.) Defendant has moved for summary judgment on all claims. (Doc. 78.)

Plaintiffs' Motion to Introduce Evidence, (doc. 77), and Defendant's Motion to Exclude or Strike Expert Testimony, (doc. 84), are also before the Court. Plaintiffs seek to introduce evidence of the two previous incidents at Defendant's store to prove that Defendant had knowledge of the hazard, that it failed to abide by its inspection procedures, and that the inspection procedures were not reasonable. (Doc. 77.) Defendant opposes this motion, (doc. 83), and seeks to exclude aspects of Ms. Guzman's deposition testimony to prevent Plaintiffs from relying on her opinions in establishing Defendant's negligence, (doc. 84.) These motions involve evidence relevant to the Court's ruling on summary judgment and will therefore be discussed first.

## DISCUSSION

### I. Motion to Exclude (Doc. 84)

Defendant Macy's moves for the exclusion of the opinion testimony of Ericka Guzman, a Macy's employee who responded to Mrs. Orr's incident. (Id.) Macy's argues Plaintiffs failed to lay the requisite foundation for her testimony, and seeks to exclude the following testimony offered by Ms. Guzman: (1) the fitting room door fell on Mrs. Orr because a screw or screws came out of the top hinge (as opposed to some other casual event, such as deterioration of the material that the screws were imbedded in); (2) the screw or screws worked themselves out of the hinge over a period of weeks or months; and (3) an inspection of the door prior to the Orr incident would have revealed the problem. (Id. at p. 2; doc. 99, p. 2.)

The parties agree that Ms. Guzman is a non-expert lay witness and her testimony must come in, if at all, under Federal Rule of Evidence 701. (Doc. 84, p. 2; doc. 99, pp. 3–4.) Pursuant to Rule 701, lay witnesses are permitted to provide opinion testimony only if that opinion is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. Fed. R. Evid. 701. The language in Rule 701(a) "is the familiar requirement of first-hand knowledge or observation, and the limitation in (b) is phrased in terms of requiring that the lay witness's testimony be helpful in resolving issues." United States v. Jayyousi, 657 F.3d 1085, 1102 (11th Cir. 2011) (internal citation omitted).

The Advisory Committee Notes to Rule 701 explain that the rule provides a means for lay witnesses to give testimony about their observations that "cannot be described factually in words apart from inferences." Fed. R. Evid. 701 (quoting Asplundh Mfg. Div. v. Benton Harbor Eng'g, 57 F.3d 1190 at 1196 (3d. Cir. 1995)). For example, a witness may testify "that a person with whom he had spoken was drunk, or that a car he observed was traveling in excess of a certain speed;" however, a lay witness could not state an opinion about the origin of a product without any first-hand knowledge of the underlying transaction. United States v. Marshall, 173 F.3d 1312, 1315 (11th Cir. 1999) (finding the district court abused its discretion by allowing a DEA agent to testify about the source of cocaine seized during an arrest because the agent had not witnessed any drug deals).

Here, the parties ultimately dispute whether, under Rule 701(a), Ms. Guzman has sufficient knowledge to opine on the cause of the falling door. (Docs. 99, 106.) Defendant emphasizes that Ms. Guzman did not observe the incident firsthand, had not inspected the door

and its parts prior to the incident, had not undergone any special training regarding the construction or mechanics of fitting room doors, and had no prior experience investigating this sort of incident. (Docs. 84, 106.) Plaintiffs contend Ms. Guzman's position at Macy's gave her experience and particularized knowledge regarding customer safety, and this experience provided a sufficient basis to form an opinion based on her observations of the door after the incident. (Doc. 99, p. 8.)

The Court agrees with Defendant and finds the specified opinions inadmissible. While Ms. Guzman can certainly testify as to anything she *observed* when she reported to the scene of the incident—including whether certain hinges still had screws in them, whether she saw any screws on the floor in the area of the incident, and whether any screws appeared to be missing entirely—she may not testify as to what *caused* the fitting room door to fall. There is no evidence that she received any training regarding the proper standards of care for installing and maintaining fitting room doors, screws, or hinges, and Plaintiffs have not shown she has special knowledge regarding the mechanics and functionality of screws and hinges that would enable her to opine as to when or why the at-issue screws came out. Moreover, with her direct knowledge of the door being limited to its post-incident condition, there is no basis for Ms. Guzman to conclude *how* any screws came out, much less how long it took for them to do so. In the absence of this knowledge and without having inspected the fitting rooms prior to the accident, Ms. Guzman cannot opine as to whether a defect could have been discovered via pre-incident inspection.

Plaintiffs argue this case is akin to <u>Bolton v. WJV Mississippi, Inc.</u>, where a restaurant manager was permitted to testify that a restaurant floor could be "slippery when wet." No. CIV.A. 08-0310-WS-M, 2011 WL 482817, at *2 (S.D. Ala. 2011). The court found the

testimony proper under Rule 701 because the manager had experience with the at-issue floor as well as other slick restaurant floors. Id. Unlike the manager in Bolton, however, the evidence here shows Ms. Guzman did not have any first-hand knowledge or prior experience with the construction or functionality of this particular fitting room door—or any fitting room doors. An after-the-fact observation of the fallen door without additional facts or personal knowledge does not provide an adequate basis for Ms. Guzman's opinion testimony under Rule 701. Accordingly, the Court **GRANTS** Defendant Macy's Motion to Exclude Expert Testimony. (Doc. 84.)

## II.    Motion to Introduce Similar Incidents at Trial (Doc. 77)

Plaintiffs moved to introduce evidence of the two prior incidents involving Macy's fitting-room doors—which Plaintiffs characterize as incidents of "prior door frame failure." (Doc. 77.) Both occurrences took place within one year of Mrs. Orr's accident. Plaintiffs seek to use the incidents as evidence that Macy's had actual or constructive knowledge that the fitting room doors were "in a state of disrepair" and posed a "danger of falling on customers." (Id. at 3.) Macy's opposes the admissibility of such evidence, emphasizing that Plaintiffs cannot prove the same condition caused each door to fall, making them dissimilar. (Doc. 83, pp. 5–6.)

The first prior incident involved a fitting room door in the "women's world" department. On July 12, 2014, the door (hereinafter the "women's world door") became partially disconnected from the door frame. (Id. at 2.) The women's world door was a "top-hinge" door, meaning the door's hinges were screwed directly onto a traditional wooden door frame. (Doc. 98-1, p. 29.) According to the incident report drafted by Ms. Guzman, the door was observed "off the top hinge and hanging out only being held up by the bottom bolt hinge." (Doc. 77-5.)

The incident report also indicated that "[t]he hinge that was still attached to the door frame was missing a screw and [Ms. Guzman] was unable to locate [it]." (Doc. 82-2, p. 116.)

The second incident involved a door in the boy's department fitting room. This door (hereinafter the "boy's department door") was a "jamb-hinge" door, the same kind of door that fell on Mrs. Orr. (Doc. 98-1, p. 16.) On August 14, 2014, the door and support post fell when the screws attaching the support post to the privacy panel "came out." (Id. at 19.) Like the door in Mrs. Orr's incident, the door's hinges remained at least partially attached to the support post. (Doc. 78-1, p. 6.)

Evidence of prior accidents is admissible under the substantial similarity doctrine "to show, for example, 'notice, magnitude of the danger involved, the [party's] ability to correct a known defect, the lack of safety for intended uses, strength of a product, the standard of care, and causation.'" Heath v. Suzuki Motor Corp., 126 F.3d 1391, 1369 (11th Cir. 1991) (quoting Jones v. Otis Elevator Co., 861 F.2d 655, 661 (11th Cir. 1988)). Because admitting evidence of prior accidents can be prejudicial to the opposing party, courts have developed limitations governing their admissibility. First, the conditions of the prior incidents must be "substantially similar" to the occurrence in question—here, a jamb hinge door fell when the support post detached from the privacy panel. Jones, 861 F.2d at 661–62. The substantial similarity doctrine does not require identical circumstances and allows for some flexibility depending on the scenario presented and the desired use of the evidence. Sorrels v. NCL (Bahamas) Ltd., 796 F.3d 1275, 1287 (11th Cir. 2015). Second, the accidents must not be too remote in time. Jones, 861 F.2d at 661–62.

The July 2014 incident qualifies as substantially similar under this doctrine. Like the door at issue, the boy's department door was a "jamb-hinge" door. Both doors fell when their

support posts disconnected from an adjacent privacy panel, but the doors remained connected to their respective support posts. While the parties may disagree over whether the same thing caused the posts to separate from the privacy panels, the Court finds that the *conditions* of the boy's department incident were substantially similar to the conditions of Mrs. Orr's incident. The Court additionally finds that the incident involving the boy's department door was not too remote in time to be fairly considered in this case. See, e.g., Jaquillard v. Home Depot U.S.A., Inc., Case No. 4:10-cv-167, 2012 WL 527418, at *3 (S.D. Ga. Feb. 16, 2012) (finding slip and falls within four years of plaintiff's fall to be admissible). Since both requirements are satisfied, the prior occurrence concerning the boy's department door is admissible.

The conditions surrounding the incident with the women's world door, by contrast, were not substantially similar to Mrs. Orr's incident and that incident is therefore not admissible. The women's world door was a top-hinge door, not a jamb-hinge door like the door involved in this case. Thus, it was assembled in an entirely different manner from the door that fell on Mrs. Orr which necessarily means the manner in which it disconnected differs as well. Most critically, the women's world door apparently fell when the door's top hinge—mounted without a support post—disconnected from the wooden door frame. As a result, the conditions of the women's world incident are not "substantially similar" to the incident in question and the incident is not admissible. See, e.g., Jaquillard, 2012 WL 527418, at *2–3 (finding that prior incidents where customers slipped on wet floors caused by rainwater or other "puddles of unknown origins" were not substantially similar to plaintiff's incident of slipping on a wet floor caused by plant watering).

For the foregoing reasons, the Court **GRANTS in part AND DENIES in part** Plaintiffs' Motion to Introduce Evidence. (Doc. 77.) Plaintiffs are entitled to use the August 2014 boy's

department incident for evidentiary support.[6]  Plaintiffs may not, however, introduce evidence regarding the July 2014 women's world incident to prove Defendant's knowledge or notice.

## III.    Motion for Summary Judgment (Doc. 78)

Defendant moved for summary judgment on Plaintiffs' claims for negligence, loss of consortium, and punitive damages.  (Doc. 78.)

### A.    Standard of Review

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law."  Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  When the nonmoving parties would have the burden of proof at trial, the moving party may discharge its burden by showing that the record lacks evidence to support the nonmoving parties' case or that the nonmoving parties would be unable to prove

---

[6] Defendant argues the other incidents are not relevant and therefore have no probative value.  However, "all that need be shown for admissibility is that the facts and circumstances be sufficiently similar to have probative value."  Saltis v. Benz, 533 S.E.2d 772, 778 (Ga. Ct. App. 2000).  For the reasons discussed above, the boy's department incident in Defendant's store was "sufficiently similar" to the Orr incident and is therefore admissible.  When such similarity is found, "the weight and probative value of such prior or subsequent occurrence rest with the jury to decide."  Id.

their case at trial. See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). If the moving party discharges this burden, the burden shifts to the nonmovants to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving parties. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)). However, "facts must be viewed in the light most favorable to the non-moving parties only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (citation and emphasis omitted).

## B.     Analysis

In Georgia, a business owner such as Macy's has a statutory duty as a proprietor to exercise ordinary care to keep its premises safe for business invitees like Mrs. Orr. O.C.G.A. § 51-3-1. This duty includes inspecting the premises to discover possible latent, dangerous conditions, as well as taking reasonable precautions to protect invitees from foreseeable dangers. See Tyree v. Westin Peachtree, Inc, 735 S.E.2d 127, 130 (Ga. Ct. App. 2012); Benefield v. Tominich, S.E.2d 563, 564 (Ga. Ct. App. 2011). However, a business is not required to ensure the safety of its patrons at all times. Sanchez v. Macy's Retail Holdings, Inc., No. 1:11-CV-4172-ODE, 2012 WL 13034850, at *4 (N.D. Ga. 2012). To recover damages for Mrs. Orr's injury, Plaintiffs must ultimately prove that Macy's breached its duty of ordinary care to the

invited public by failing to discover and cure a defect with the fitting room door prior to the incident. Am. Multi-Cinema, Inc. v. Brown, 679 S.E.2d 25, 27 (Ga. 2009) ("[A] plaintiff must show injury caused by a hazard on [defendant's property] that the [defendant] should have removed in the exercise of ordinary care for the safety of the invited public.").

Georgia courts have developed a burden-shifting framework to address premises liability cases at the summary judgment stage. Id. at 28. To survive a motion for summary judgment, the plaintiffs must put forth evidence that, viewed in the most favorable light, enables a rational trier of fact to find that the defendant had actual or constructive knowledge of the hazard. Id. If this burden is met, the burden of production shifts to the defendant to produce evidence that the plaintiff's injury was caused by her own negligence.[7] Id. If a defendant satisfies that burden, the plaintiff must either come forward with evidence to create a genuine dispute of fact on her own negligence or show that such negligence was due to conditions under the defendant's control. Id. In applying this framework, the Supreme Court of Georgia has cautioned:

> [I]ssues such as how closely a particular retailer should monitor the premises and approaches, what retailers should know about the property's condition at any given time, how vigilant patrons must be for their own safety in various settings, and where customers should be held responsible for looking or not looking are all questions that, in general, must be answered by juries as a matter of fact rather than by judges as a matter of law.

Id. Summary judgment in this context is improper absent "plain, palpable, and undisputed" evidence. Robinson v. Kroger Co., 493 S.E.2d 403, 414 (Ga. 1997).

### (1) Macy's Knowledge of the Hazard

As noted above, Plaintiffs must show that Macy's had actual or constructive knowledge of the hazard that caused her injury. Benefield, 708 S.E.2d at 564. While Plaintiffs allege Defendant had actual knowledge, (doc. 92, pp. 23–24), Defendant claims there "is no evidence

---

[7] In the present case, Macy's does not allege that Mrs. Orr was negligent or was in any way aware of the hazard. (Doc. 78, pp. 1–2, 14.)

that Macy's had actual knowledge of the problem with the subject door prior to the Orr incident," (doc. 78, p. 14), and the parties do not brief the issue any further. For the reasons discussed below, Plaintiffs have put forth sufficient evidence to survive summary judgment based on Defendant's constructive knowledge. Since a plaintiff can prove a defendant's liability through actual or constructive knowledge, the Court finds that there is a material issue of fact regarding constructive knowledge, the Court need not address the issue of actual knowledge.

The question before the Court, then, is whether Plaintiffs have presented enough evidence to discharge their burden regarding Macy's constructive knowledge of the hazard. "Constructive knowledge of a defect or hazard may be inferred when there is evidence that the defendant lacked a reasonable inspection procedure."[8] Shepard v. Winn Dixie Stores, 527 S.E.2d 36, 38 (Ga. Ct. App. 1999); see also Ferguson v. Premier Homes, Inc., 695 S.E.2d 56, 59 (Ga. Ct. App. 2010) ("[W]here a latent or obscured defect exists. . . it will be inferred that the owner has constructive knowledge if a reasonable inspection—one required in the exercise of ordinary care–would have revealed the defect."). At the summary judgment stage, a defendant "must demonstrate not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident." Shepard, 527 S.E.2d at 38.

Macy's claims it is entitled to summary judgment because it had a reasonable inspection program in place and complied with all inspection procedures. (Doc. 78, p. 13.) Macy's first argues the established procedures were adequate because Mr. Rutland performed monthly, "in-depth" fitting room inspections. (Id. at p. 18.) The monthly work orders instructed him to inspect "stall doors for proper operation" and "walls and stalls for damage." (Doc. 104, p. 3.)

_____

[8] Constructive knowledge of a hazard can also be demonstrated by evidence that an employee of the defendant was in the immediate vicinity of where the injury occurred and had an opportunity to correct the hazardous condition prior to the accident. Benefield, 708 S.E.2d at 567. However, this theory of liability has not been proposed by Plaintiffs. (Doc. 92, p. 27.)

Macy's contends any attacks on Mr. Rutland's credentials are improper based on his 40 years of experience in "facility maintenance." (Id. at p. 3.) Next, Macy's maintains the HASI form's lack of reference to fitting room doors is irrelevant because several categories—for example, "broken fixtures" and "miscellaneous issues"—clearly encompass fitting-room inspections. (Id. at p. 7.) Finally, Macy's claims the available evidence shows that Mr. Rutland completed the required March 2015 maintenance inspection. (Doc. 78, pp. 5–6.)

Plaintiffs dispute Macy's argument on several fronts. First, Plaintiffs aver that Macy's inspection procedures cannot be considered reasonable because they did not specifically address the inspection and maintenance of fitting room structures. (Doc. 92, p. 27.) Plaintiffs next argue that even if Macy's inspections were reasonable, some inspection-related procedures—such as training, performance of daily fitting room checks, and mandated variation of the employees performing monthly inspections—were not followed. Finally, Plaintiffs dispute Macy's claim that the March 2015 maintenance inspection was completed prior to the at-issue incident.[9]

In deciding whether Macy's lacked constructive knowledge as a matter of law, the Court must bear in mind,

> [t]hat it is the jury, not the court which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of the witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable.

---

[9]  This dispute centers around three work orders produced during discovery. Two of the three work orders contain the same assignment title: "Work Order 84753." (Doc. 104, p. 5; doc. 109, pp. 5–6.) A spreadsheet of maintenance orders shows the first "Work Order 84753" was created on March 10, 2015 and completed on March 20, 2015. (Doc. 109-11.) However, the second "Work Order 84753," titled "FR Inspection – Monthly," shows a completion date of April 6, 2015, but is not listed on the spreadsheet. (Doc. 109-10.) Plaintiffs argue the spreadsheet, showing an assignment date of March 10th, combined with the second document, showing a completion date of April 6th, demonstrates that Mr. Rutland did not complete the March maintenance order until after the Orr incident. (Doc. 92, pp. 18–19.) In response, Macy's argues the date discrepancy is immaterial because Work Order 84753 was not actually the maintenance order for March 2015 (and that there was a different work order for that job). (Doc. 104, pp. 5–6.)

<u>Donastorg v. Rainbow USA, Inc.</u>, 802 S.E.2d 425, 428–429 (Ga. Ct. App. 2017) (citation and punctuation omitted).

The Court finds Plaintiffs' arguments compelling and holds that a jury must determine whether Macy's inspection policies were reasonable. Plaintiffs have pointed to several deficiencies that, viewed in the most favorable light, enable a jury to find that Macy's policies, procedures, and employee trainings were neither adequate nor adhered to—breaching Macy's duty of care.

First, the inspections that Macy's required could be considered unreasonable. Mr. Rutland's work orders did not instruct him to inspect the integrity of the support posts, the attachments thereto, or the screws holding the fitting room structures together. (Doc. 92, p. 19.) Moreover, while Macy's employees generally entered and inspected the fitting rooms every hour throughout the day, it is undisputed that the employees were not inspecting the integrity of the support posts or other structural components. (<u>Id.</u> at p. 20.) Similarly, the HASI inspection form did not mention fitting rooms, fitting room doors, or related structures within fitting rooms, and Ms. Donaldson—an employee who conducted many HASI inspections—stated that, in performing the inspections, employees do not venture beyond the specifications of the checklist. (<u>Id.</u> at p. 17.) Finally, a jury could find these inspections particularly unreasonable following the August 2014 incident in the boy's department fitting room. Following that incident, Macy's did not perform any inspections beyond those included in its standard procedures, and, less than year later, another support post detached from a privacy panel, resulting in harm to Mrs. Orr. (<u>Id.</u> at p. 16.)

Even if the Court were able to declare Macy's inspection procedures reasonable as a matter of law, material issues of fact remain as to whether Macy's actually adhered to its

inspection policies. Fitting rooms were to be inspected at least once an hour; though employees testified to inspecting the fitting room the day of Mrs. Orr's accident, no logs have been produced. (Doc. 109, p. 13.) Macy's policies also required "all [s]afety committee members and other inspectors [to] receive documented Safety Inspection Training annually." (Id. at p. 8.) Mr. Rutland's work as a maintenance inspector subjected him to this policy, but it is undisputed that Mr. Rutland never received such training. (Id. at pp. 7–8.) It is similarly undisputed that Ms. Wade violated the HASI protocol by performing nine of the twelve monthly HASI inspections preceding the Orr incident, despite written policy requiring that no single employee complete more than six inspections per twelve-month period. (Id. at p. 11.) Perhaps most significantly, the parties dispute whether Mr. Rutland completed the March 2015 fitting-room maintenance inspection prior to the Orr incident. (Doc. 92, pp. 18–19; doc. 104, pp. 5–6.)

To prevail at the summary judgment stage based on a lack of constructive knowledge, a defendant "must demonstrate not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident." Benefield, 708 S.E.2d at 564. The evidence before the Court casts doubt on whether Defendant's inspection program was reasonable or properly implemented and precludes the Court from finding Defendant lacked constructive knowledge. See Blocker v. Wal-Mart Stores, Inc., 651 S.E.2d 845, 848 (Ga. Ct. App. 2007) ("[I]n the absence of evidence that [the defendant] actually carried out its inspection procedures, we cannot say that [the defendant] has shown, as a matter of law, that it lacked constructive knowledge of the hazard.") (citation omitted).

Macy's argues that a determination of the reasonableness of its inspection procedures is unnecessary because discovery of the defect would have required the exercise of *extraordinary* care, a more stringent standard than is required by law. (Doc. 78, pp. 16–18.) Relying on

<u>Ferguson</u>, Macy's avers whatever caused the fitting room to collapse had "not existed for a sufficient time to charge [Macy's] with the duty of discovering it." 695 S.E.2d at 59. Macy's is correct that a business does not have a duty to discover an unknowable defect. <u>See</u> <u>id.</u> ("[O]rdinary care does not require a premises owner to inspect the premises where nothing in the character of the premises, such as a prior similar injury or some other notice, indicates there might be a defect.") The record in <u>Ferguson</u> was devoid of evidence to show the defendant had any indication of the defect at issue. <u>Id.</u> at 60. The same cannot be said about the record in this case, however. Prior to the Orr incident, one substantially similar incident had occurred in one another fitting room at the same store. (Doc. 83, p. 2; doc. 98-1, p. 19; <u>see also</u> "Discussion Section II, <u>supra</u>.) At the very least, this creates a factual dispute for the jury as to whether the prior incident should have put Macy's on notice that other doors attached to support posts, like the one that injured Mrs. Orr, may have required attention and repair.

By offering clothing for sale, Macy's invites customers like Mrs. Orr to utilize its fitting rooms. Customers expect the facilities to be safe for their intended use—to try on clothes. The Court cannot say there is "plain, palpable and undisputable proof" that Macy's inspection procedures "were adequate to guard against known or foreseeable dangers" as a matter of law. <u>Donastorg</u>, 802 S.E.2d at 428. Absent "plain, palpable, and undisputable proof" that Defendant's inspection procedures practices were in place, actually followed, and reasonable in light of foreseeable dangers, summary adjudication as to Plaintiffs' negligence claim is not proper. <u>Id.</u> at 745. Since issues of fact remain as to whether Defendant carried out its inspection procedures and whether such procedures were reasonable, the Court **DENIES** Defendant's Motion for Summary Judgment as to Plaintiffs' negligence claim.[10]

---

[10] Defendant also moved for summary judgment on Mr. Orr's loss of consortium claim. (Doc. 78, p. 26.) Under Georgia law, loss of consortium claims are derivative claims that stem from the rights of a spouse.

## IV.    Punitive Damages

Macy's has also moved for summary judgment as to Plaintiffs' claim for punitive damages.  (Doc. 78, p. 25.)  To recover punitive damages in a premises liability action, a plaintiff must "prove[] by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences."   O.C.G.A. § 51-12-5.1. "[S]omething more than the mere commission of a tort is always required for the imposition of punitive damages."  Cochran v. Lowe's Home Ctr., 487 S.E.2d 50, 52 (Ga. Ct. App. 1997). "[N]egligence, even gross negligence, is inadequate to support a punitive damage award. . . . There must be circumstances of aggravation or outrage."  Duncan v. Klein, 720 S.E.2d 341, 347 (Ga. Ct. App. 2011).

Plaintiffs have not put forth evidence that would enable a reasonable jury to find "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences" by Macy's.  Additionally, punitive damages claims in premises liability suits typically only survive summary judgment when the hazard at issue was "highly dangerous," a "deadly situation," or was completely hidden.  Griffith v. Burger King Corp., No. 1:07-CV-1053-TWT, 2008 WL 11407208, at *3 (N.D. Ga. 2008); see also Reid v. BMW of N. America, 430 F. Supp. 2d 1365, 1374 (N.D. Ga. 2006) (allowing punitive damages claim to proceed to jury where a defendant knew of a car defect that posed a lethal risk to customers and did not seek to address the issue); Nestlehutt v. Am. Indus. Chem. Corp., No. 1:03-CV-1054, 2005 WL 6033021, at *8–9 (N.D. Ga. May 5, 2005) (denying summary judgment on punitive damages where a company used a paint known to fade quickly

---

See Henderson v. Hercules, Inc., 324 S.E.2d 453, 454 (Ga. 1985).  Since Mrs. Orr's claims survive summary judgment, Mr. Orr's loss of consortium claim remains viable.

when labeling highly corrosive chemicals as dangerous); <u>Cochran</u>, 487 S.E.2d at 52 (finding jury issue where plaintiff was pummeled by over 300 pounds of falling merchandise despite defendant's clear awareness of danger associated with its method of stacking the merchandise and the fact that there fifteen prior similar incidents of merchandise falling).  While a collapsing fitting room could lead to severe injury, it is not a hazard in the same class as several hundred pounds of falling merchandise, knowingly ineffective chemical warnings, or lethally defective motor vehicles.  Further, a plaintiff's evidence must be "clear and convincing" that the defendant acted with malice, wantonness, conscious indifference or willful misconduct—evidence lacking in this case.

A determination of Defendant's culpability in tort is generally a matter for a jury, but Plaintiffs' claim for punitive damages is deficient as a matter of law and cannot proceed.  The Court **GRANTS** Defendant's Motion for Summary Judgment on the issue of punitive damages. (Doc. 78.)

**V.      Request for Oral Argument (Doc. 110)**

Pursuant to Local Rule 7.2, Plaintiffs requested oral argument on Defendant's Motion for Summary Judgment, (doc. 110).  The Court, having read and considered Defendant's Motion and all of the parties' related motions and briefs, found sufficient bases to issue an opinion without oral argument and therefore **DENIES** Plaintiffs' request.

**CONCLUSION**

In light of the foregoing, the Court hereby **GRANTS** Defendant's Motion to Exclude Expert Testimony, (doc. 84), **GRANTS in part and DENIES in part** Plaintiffs' Motion to Introduce Evidence, (doc. 77), **DENIES** Defendant's Motion for Summary Judgment, (doc. 78), and **DENIES** Plaintiffs' Request for Oral Argument, (doc. 110).

**SO ORDERED,** this 21st day of December, 2018.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA